## THE ARIZONAN.

### (District Court, E. D. New York. May 3, 1905.)

1. SALVAGE—PERSON ENTITLED TO AWARD—OWNER AND CHARTERER.

The owner of a tug contracted to furnish to a charterer the "services of the tugboat * * * fully manned and equipped" at a stipulated hire per day. While towing for the charterer under such charter party the master of the tug moored his tow, and went to the assistance of a burning steamship, to which the tug rendered salvage services, remaining with her until the next day; the charterer in the meantime completing the towage with another vessel. *Held*, that since the charter was not a demise under which the charterer became responsible for the risks taken by the master in engaging in the salvage service, or for any negligent or wrongful act committed by him, it was not entitled to an award made for the salvage, which belonged to the owner and crew.

2. SAME.

The legal status of the parties was not changed by the fact that the master of the tug at the time was by agreement taken from regular employés of the charterer, since he was for the time the servant and agent of the owner who paid him.

3. SAME—ESTOPPEL.

The fact that the owner accepted the per diem hire for the full time the tug was employed by the charterer, including that while she was engaged in the salvage service, did not estop him from claiming the salvage award; it not appearing that such matter was taken into consideration.

In Admiralty. Suit to recover for salvage services.

Avery F. Cushman, for Commercial Union Towboat Co.

Benedict & Benedict (R. D. Benedict, of counsel), for Merritt & Chapman Derrick & Wrecking Co.

THOMAS, District Judge. The Commercial Union Towboat Company owned the tug Unique. The Merritt & Chapman Derrick & Wrecking Company chartered the tug pursuant to the following letters:

"New York, October 25th, 1904.

"The Commercial Union Towboat Co., Messrs. Smith & Briggs, Agents, 45 South Street, City—Gentlemen:

"We herewith accept your verbal proposition to furnish this Company with the services of the tugboat Unique, for a week more or less, at $80.00 per day of twenty-four hours, fully manned and equipped.

"It is understood and agreed that you will make use of as many of our night crew as can be spared, and that they are to be employed and paid by you.

"Please acknowledge receipt of this letter, and oblige,

"Yours very truly,    Merritt & Chapman Derrick and Wrecking Co.,
"Isaac E. Chapman,
"Vice-President."

"New York, October 26th, 1904.

"Mess. Merritt & Chapman Dk. & Wkg. Co., 17 Battery Place, City—Gentlemen: We herewith acknowledge receipt of yours of the 25th and note the acceptance by you of our tug Unique, for charter, for a week more or less, at the rate of $80.00 per day of twenty-four hours, boat to be manned and equipped, we also to employ and pay your Capt. and two extra men, during the time of said charter.

"Yours very truly,    Commercial Union Towboat Company,
"Smith & Briggs, Agts.
"A. W. S."

The tug was employed by the charterer on the night of October 28th, towing for the charterer two derricks loaded with marble, when the captain discovered the steamship Arizonan on fire, and went to her rescue, mooring his tow at a neighboring dock. The tug aided in salving the Arizonan, and, while the immediate and substantial services was short, she remained with the salved vessel until the following day, and did not deliver the derricks at their destination. The charterer made such delivery by other means. The charterer paid the stipulated hire for the tug during the time she was rendering the salving services. Owner and charterer each claim the sum awarded for the salving services of the tug. The general rule is that the owner is entitled to such award, unless there is a demise of the tug, or the contract of hiring stipulates to whom it shall belong. In the case at bar the owner agreed to furnish the charterer "with the services of the tugboat * * * fully manned and equipped," and paid the members of the crew for their services. They were the servants of the owner. The fact that the owner selected them, in whole or in part, from the charterer's night crew, did not change the legal relation. The charterer urges that the agreement gave it the exclusive right to the services of the tug, and thereby excepts the case from the general rule above stated. But a charter party contemplates that the charterer shall have the whole and exclusive use of the vessel, whether or not there be a demise of the ship. In case of a demise the charterer has possession, whereby right of use is given. If the charter party is less than a demise, the charterer is entitled to exclusive use, but not to possession. Here the owner did not undertake to furnish possession, but to furnish the services of its servants and a vessel retained in its possession. Therefore it is concluded that the mere fact that the charterer was entitled to the exclusive use does not differentiate it from rights under a charter amounting to a demise or less than a demise. It would be entitled to exclusive use in either case. The charterer's contention that its right of use is as exclusive as if it accrued under a demise is correct, but the vice of the argument, as applied to the claim to the award, is that the charter party is assumed to be tantamount to a demise. If the Merritt Company stood to the owners and tug in the relation of a lessee, it was subject to grave liabilities, which the contract does not impose, and which the charterer would disclaim. Certainly, for the negligent acts, and, within the scope of his employment, the wrongful acts, of the master, the charterer would not admit responsibility. Would the charterer deem the owner relieved from liability for culpable faults of navigation on the part of the master or crew, and acknowledge itself as the party liable to respond therefor? Would the charterer admit that the legal status of each contracting party was what it would be in the case of a demise? If the master, after tying up the tow, negligently collided with another vessel while going to or rendering the salvage service, would the charterer admit liability to the owner or a third person injured thereby? The contract imposes no such liability, and it is quite certain

that the charterer would disclaim it. The charterer, in its present contention, seeks to gain the profit accruing from a certain legal status, while absolved from the legal duties and liabilities that pertain to such status. But they may not be disjoined. The charterer did not send the tug to the fire, nor assent thereto. The use to which the master put the tug was not a use which the charterer designated, nor was the master's act incidental to such use. There can be no salvage service unless the thing salved be in danger, and the master of the tug voluntarily put himself, his crew, and the tug under the influence of such danger. The charterer took no risk of it. It did not command it. The master exercised the authority impliedly conferred upon him by his principal. The owner was such principal. The master acted for his principal. He hazarded his principal's servants and property, and perchance his insurance. He involved his principal in all liability for injury to any person whomsoever, flowing from any unlawful act of his. The very danger of the tug in salving a burning ship is one of the elements considered in ascertaining the award. The risk was not that of the charterer, whether it pertained to the persons or property involved in the service. These considerations are fundamental, and illustrate the legality of the charterer's present claim, measured by his actual and legal relation to the tug and crew, that did the acts which earned the award. It is urged that the owner accepted the per diem compensation for the time occupied by the salving service. But it is thought that the owner is not thereby estopped from claiming the award. For all that appears it was an oversight. It does not appear that there was any controversy between the parties in that regard, or that the owner, in terms, asserted that the tug was at the time in the charterer's service, and that it was legally bound to pay the stipulated hire. Liability to passengers, freighters, or charterers by deviation or delay by reason of diversion to perform a salving service is an element considered in fixing the award. If the charterer has suffered legal damage, the owner must respond for the same; and if, under a mistake of fact, the charterer has paid for unearned service of the tug, that may be recovered.

Pursuant to these views, the decree will provide for the payment of the award to the owner and crew in the proportion heretofore directed.